Richard Shore v. State Farm Fire & Casualty C I'm here on behalf of Appellant Gilbert LLP. Your Honors, the outcome of this appeal has ramifications far beyond the dispute between the parties. If the District Court's ruling is affirmed, successful plaintiffs in any action with a fee-shifting component will have a perverse incentive not to conscientiously pursue a fee-shifting claim, at least where counsel has been discharged, because the plaintiff's obligation to its counsel would be capped by the amount of the fee-shifting recovery, including a potential non-recovery. Additionally, there would be enormous uncertainty concerning the obligations of discharged counsel to provide legal services to its former client years after the discharge. These points highlight the flaws in the District Court's decision. I want to just briefly state the facts. In 2013, after prevailing on an exemplar claim brought under the False Claims Act against State Farm, the relators filed a motion for post-judgment relief that sought, among other things, an award of attorney's fees and expenses from State Farm. For reasons they now admit were strategic and which Gilbert believes are improper, the relators chose not to opine on the reasonableness of the fees and expenses Gilbert had incurred during his three-year representation of the relators. That representation was terminated by the relators approximately two years prior to the fee-shifting petition. Ultimately, the District Court awarded relators the vast majority of the fees and expenses that had been incurred by Weisbrod, Mattez, and Copley, the firm that replaced Gilbert LLP, when Gilbert partner August Mattez left to form his own firm and Heidelberg-Carmen Relators Mississippi Counsel, but only a small share of the fees and expenses related to work performed by Gilbert. The District Court did not conclude that the balance of the fees and expenses incurred by Gilbert were unreasonable. Instead, the Court simply held that relators had not submitted adequate support for those fees and expenses. And then in 2017, after relators received payment from State Farm for the amounts awarded by the District Court, Gilbert filed a motion—essentially, the of Gilbert's lien. In September 2017, the District Court granted relators' motion to extinguish Gilbert's lien and denied Gilbert's motion to value it. Notwithstanding that Gilbert had represented relators for three years on a contingency fee basis, in good faith, and had zealously pursued and competently pursued relators' claims against State Farm, the District Court essentially reduced Gilbert's fees and expenses to such an extent that Gilbert suffered a significant loss on its representation of relators. The District Court's extinguishment of Gilbert's lien was based on its erroneous conclusion that Gilbert had unclean hands in connection with the 2013 fee-shifting motion. As an initial matter, the District Court's extinguishment of Gilbert's lien is based on three false premises. First, that it was Gilbert, rather than relators, that had the lien for fees and expenses in the fee-shifting proceeding. Second, that Gilbert as discharged counsel was required to provide legal services to relators by determining what fees and expenses related to Gilbert's representation relators should seek from State Farm, and by opining that those fees and expenses were reasonable in the context of the fee-shifting claim. And third, that Gilbert's entitlement to quantum merit fees from the relators was capped by relators' recovery of a fee-shifting award from State Farm. With respect to the first point, under the plain language of the False Claims Act, a fee-shifting award belongs to and therefore must be pursued by the prevailing plaintiff, not by its counsel and certainly not by its former counsel. The statute says if the government does not proceed with an action under this section, the person bringing the action, here relators, shall also receive an amount for reasonable expenses. It doesn't say anything about the law firm. Accordingly, it was relators' obligation to marshal all necessary evidence to support its fee-shifting claim. Of course, if relators needed factual information or documentation that was in Gilbert's possession, they were entitled to ask for it, and Gilbert would have provided it. Here Gilbert provided everything that relators' counsel asked for, except for filing a petition for its fees and expenses in the fee-shifting proceeding, which would have been improper, and providing an affidavit delineating the fees that relators were or wanted to request and opining on the reasonableness of those fees. With respect to the second point, relators dispute that they were asking Gilbert to perform legal services, but this is simply untrue. Relators were clearly asking Gilbert to provide not simple factual information and supporting documentation, but were also asking Gilbert to make strategic determinations about what fees and expenses to seek, to opine on the reasonableness of such fees and expenses in the context of the fee-shifting claim, and to exercise legal judgment in doing so. Relators' counsel made clear that they were going to submit whatever Gilbert provided to them without exercising any meaningful oversight, review, or judgment. Relators thus were asking for a form given that it had been discharged two years before. And finally, with respect to the third point, throughout their briefing, relators argue repeatedly that a fee-shifting award is dispositive of the amount a former client owes to discharged counsel. This view is flatly inconsistent with the plain language of the FCA's fee-shifting provision, which only permits, as I quoted it previously, a successful plaintiff to bring a fee-shifting claim against a losing defendant, and makes no mention of any limitation on the plaintiff's attorney's fees claim against the plaintiff. The Supreme Court flatly rejected the relator's position in the Venegas case, holding that a claim for fees by a plaintiff against a defendant in a fee-shifting context is distinct from a claim for fees by the law firm against the plaintiff, its client or former counsel. Relator's position is also contrary to public policy and logic, because it would create a perverse incentive for a successful plaintiff either not to make, or not zealously to pursue, a fee award, at least as respects discharged counsel's fees and expenses. Because why do so? Its obligations to its former lawyer would be capped by the fee-shifting recovery. The District Court's erroneous, unclean hands ruling has three separate components that I want to touch on. First, that Gilbert arguably, as the Court said, did not fully comply with Mississippi Rule of Professional Conduct 1.16d, which requires a terminated attorney to take, quote, take steps to the extent reasonably practicable to protect a client's interest. Second, that Gilbert's actions violated the State Letter with Relators. And third, that Gilbert, again arguably, caused misrepresentations to be made to the Court or induced Relators to make misrepresentations. When Gilbert provided a spreadsheet of fees to the Relators, which Relators ultimately submitted to the Court, the arguable misrepresentation consisted of a column heading labeled Attorney, which included non-attorneys in the itemized fee entries. None of these bases establishes unclean hands. Rule 1.16d states that upon termination of a representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and District Court's interpretation of Rule 1.16d expands the rule to unprecedented breadth and would create substantial uncertainty if affirmed. The plain text of Rule 1.16, as well as the case law interpreting the rule, make clear that the purpose of the rule is to provide for a smooth transition from discharged counsel to replacement counsel and to ensure adequate representation during the transition. Neither the Relators nor the District Court cite to a single case that required discharged counsel to perform substantive work for a former client nearly two years after the representation was terminated, as the District Court here held Gilbert was obligated to do. This interpretation is not supported by the plain language of the rule. The rule establishes what discharged counsel must do, quote, upon termination, close quote, not following termination and forevermore. The District Court's ruling is further without merit, given that the Relators' replacement counsel, Weisbrod, Mattes and Copley, were in a better position than Gilbert to provide the services Relators sought from Gilbert at the time of the fee-shifting proceeding, because Weisbrod, Mattes and Copley partner Augie Mattes had been the partner at Gilbert who supervised Relators' case against State Farm and performed a substantial amount of the work in connection with that matter. The Relators' contention that because Rule 1.16 requires discharged counsel to maintain and provide documents, it follows that Gilbert was required to produce an affidavit of reasonableness as a non-sequitur. Nothing in the record here establishes that Gilbert refused to provide Relators with any documents or information that they requested. Instead, the only thing that Gilbert is, the record demonstrates that Gilbert declined to do was to provide an affidavit selecting the fees that Relators should pursue against State Farm and attesting to their reasonableness. Next, Your Honors, the second unclean hands Brown was that Gilbert breached the terms of its engagement letter. This is incorrect. The district court relied on a provision in the agreement stating that Relators and Gilbert, quote, agree to seek recovery of all costs and expenses from the defendants and or the government to the extent that such recovery is permitted under applicable law, close quote. The district court concluded that this provision survived termination of the attorney-client relationship. Notably, Your Honors, even Relators agree that this provision does not apply to attorney's fees Gilbert is owed, but instead only applies to Gilbert's costs and expenses. With respect to whether Gilbert had a contractual obligation to seek its expenses from State Farm, there's no support for the notion that any such requirement survived termination of the agreement. The language relied on by the district court required Gilbert to represent Relators in seeking recovery from State Farm. However, that provision was subject to the Relators' unfettered right to terminate Gilbert's representation. That termination was unqualified and complete. Thus, whatever obligation Gilbert had to represent Relators in connection with costs and expenses was terminated, just as was Gilbert's obligation to represent Relators in connection with the FCA claims. The termination provision states that State Farm must reimburse Gilbert in accordance with the costs and expenses provision, but it does not state that Gilbert retains the obligation to pursue reimbursement of costs and expenses from State Farm. That obligation was terminated along with every other aspect of Gilbert's representation of Relators. In any event, the obligation to pursue recovery is qualified. It only applies if, quote, permitted under applicable law, close quote, and as I've discussed, the fee-shifting claim was Relators, not Gilbert, so Gilbert could not pursue it. But even if Gilbert had a continuing obligation to assist Relators in seeking recovery of costs and expenses, Gilbert satisfied its obligations. In response to Weisbrod-Mattei's and Copley's 2013 request, Gilbert provided a spreadsheet detailing the expenses it incurred while representing Relators that ultimately was submitted to the Court. It did not provide backup documentation because Relators through WMC, Weisbrod-Mattei's and Copley did not request it. But the spreadsheet contained basically the same information Relators provided concerning Weisbrod-Mattei's and Copley's expenses, and those were reimbursed at 90 percent, while Gilbert's were only reimbursed at 28 percent. And finally, Your Honors, Gilbert did not make any misrepresentation to the Court. Similar to its breach of contract ruling, the District Court, sua sponte, held that Gilbert arguably caused misrepresentations to be made to the Court or induced Relators to make misrepresentations to the Court. The arguable misrepresentations consisted of a column heading labeled Attorney and a spreadsheet of Gilbert's fees that also included non-attorney Gilbert personnel. The mislabeled heading was, at most, the equivalent of a Scrivener's error and was not a misrepresentation under Rule 8.4. The Mississippi Supreme Court has held that misrepresentation under Rule 8.4 requires that the statement be made with intent to deceive or mislead and must be established by clear and convincing evidence. Neither of those standards are even close to being satisfied here. A cursory review of Gilbert's expense spreadsheet demonstrates that any error in the heading was inadvertent. A Relators counsel who had supervised the work of the non-attorney timekeepers included on the spreadsheet knew that not all of the timekeepers were attorneys. State Farm figured this out, and in these circumstances, Gilbert cannot be reasonably found to have intended to mislead Relators. The use of the word attorneys was simply shorthanded in the same way as attorneys' fees is regularly used to include hourly billers, so we ask that this Court reverse the district court in remand to set the value of Gilbert's lien. Thank you, Mr. Shor. You've saved time for rebuttal. Yes. Thank you, Your Honor. I'll plead. Good morning, Your Honors, and may it please the Court. My name is William Copley, and I'm here on behalf of the appellees in this case, Relators Corey Rigsby and Carrie Rigsby. This false claims act case involves an unprecedented attempt by a discharged firm to shift responsibility for paying its fees and expenses from a culpable defendant to its former clients. When they were preparing the motion, Gilbert refused to exercise billing judgment or even say how much it thought it was owed in quantum merit under Mississippi law. Worse, it also refused to provide a declaration or any other actual supporting evidence that the Rigsby's could use to recover those fees and expenses. The question before this Court is can Gilbert come back four years later and use the very evidence it withheld to make the Rigsby's pay fees and expenses that could have been recovered from State Farm. The District Court opinion holding that Gilbert acted improperly and thus could not recover additional fees in equity is well-reasoned. To the extent that the additional evidence that Gilbert wanted to use in 2017 could warrant additional fees and expenses, those are fees and expenses that could have been recovered from State Farm and that State Farm should have paid. Either Gilbert now must forego those fees or the Rigsby's must pay them. The District Court correctly held that Gilbert should bear that loss because it did not provide the evidence when it should have. I want to track the order of the District Court's opinion today. I'd like to start with the first ground that the District Court stated for its decision that Gilbert slept on its rights. Second, I'll turn to arguing why the District Court was correct that Gilbert in fact had and violated duties to the Rigsby's to exercise billing judgment, say what it thought they owed, and to provide with evidence to support that calculation. Let me start with the first ground cited by the District Court, though, that Gilbert slept on its rights. Gilbert devotes almost all of its briefing and all of its argument today on why it believes it had no duty to provide billing-related evidence to the Rigsby's, yet it has no answer for why it did not come forward with such evidence on its own behalf in 2013, when it knew the Court was considering its reasonable fees and expenses, and while the Court still could award those fees and expenses against State Farm. It didn't mention the issue in its opening brief. It addressed it only in the last two pages of its reply brief, and we believe, under this Court's precedence, that its failure to do so should automatically warrant an affirmation of the District Court below, because Gilbert hasn't satisfied a necessary prerequisite for success, because it didn't appeal an independent ground for the District Court's ruling. But if this Court reaches the substance of the argument, Gilbert also has no substantive defense for why it didn't do these things. Its primary response is that the False Claims Act only entitles relators to seek fees and expenses, but that does not address the fact that Gilbert had two other indisputable alternative avenues in which it could have presented evidence that would have fostered it recovering its fees and expenses from State Farm. First, it's beyond dispute that Gilbert could have filed in 2013 the very same motion to value its lien with all the same exhibits that it submitted. Alternatively, it could have accepted one of the Reeksby's many, many requests for declarations and supporting evidence that they could use to support their fee petition in 2013 to recover Gilbert's fees and expenses. In four briefs to the District Court, two briefs to this Court, and an oral argument, Gilbert still has never explained why it did neither thing. And there's no question that Gilbert had noticed that the Court was considering its reasonable fees and expenses and an interest in the outcome. Gilbert admits on page 28 of its opening brief that it had an obvious interest—that's Gilbert's word, not mine—obvious interest in the District Court's determination of its reasonable fees and expenses. Moreover, the factors—the Supreme Court of Mississippi has held repeatedly that the factors that determine reasonable fees in quantum merit are governed by the factors in Mississippi Rule of Professional Conduct 1.5, and that those are the same factors that apply in federal fee-shifting cases. As a result, Gilbert knew that the Court was deciding the reasonable value of its fees and expenses that was applying the same factors that would govern its quantum merit entitlement, and yet it did nothing at the time, even though it knew that the opportunity to recover those fees and expenses from State Farm would be lost. In addition, Your Honor, Gilbert not only had an obligation to advocate for itself, Gilbert also had an obligation to assist the Rigsby's in recovering its fees and expenses from State Farm. Now, Gilbert's appeal is largely based on mischaracterizing the Rigsby's request for basic billing-related evidence as a request for legal representation. But the simple fact of the matter is, Your Honors, the Rigsby's asked the Gilbert attorneys to be witnesses, not lawyers. They asked them to sign a declaration that said what they did and why it was reasonable, and to provide documents in their possession that are relevant, including receipts. On page 7 of its reply brief, Gilbert sort of says the Rigsby's acknowledge what they're seeking. I think it's very important that the Court understand exactly what the Rigsby's asked for and why. A statement of how much Gilbert was owed for his services, an explanation for why that amount was reasonable, and receipts and other records that document Gilbert's expenses. Now, Gilbert says that, you know, tries to justify its refusal by saying that it could not represent the Rigsby's versus State Farm. But that conflates two entirely different issues. On the one hand, is Gilbert telling the Rigsby's what Gilbert believes it's owed and why? And on the other, is a completely separate thing for Gilbert to tell the Rigsby's what they have to seek from State Farm. Gilbert didn't have to do the latter to do the former. To state it more specifically, Gilbert didn't need to advocate on behalf of the Rigsby's at all. Gilbert just needed to advocate for itself within the bounds of its ethical responsibilities. It could exercise billing judgment and tell the Rigsby's what hours and rates it believed it should be paid in quantum merit under Mississippi law. It could provide a declaration explaining that calculation and talking about what Gilbert did and why it did it and why it was reasonable. And it could turn over receipts and other kinds of actions required Gilbert to represent the Rigsby's. And Gilbert has no actual defense for why it didn't do any of those things. Moreover, Your Honors, Gilbert admits in this case that it did not exercise billing judgment and refused to tell its clients what they were owed. It says, it told the Rigsby's, you owe us millions of dollars, but we're not going to tell you how many. If you look at the affidavit that Gilbert filed in support of his 2017 motion by Craig Litherland, he describes the Excel spreadsheet, which is the only thing that Gilbert would give the Rigsby's, as, quote, largely unedited materials. In emails with the Rigsby's current counsel in 2013, Gilbert said it would only perform, quote, a clerical cleanup. The spreadsheet that it gave the Rigsby's contained obvious entries for other matters, even on the first page, which suggests that Gilbert didn't even read it. Gilbert even admits this point in his briefing when it tries to justify its conduct by saying it couldn't tell the Rigsby's what to seek from State Farm. But that's completely upside the point. There's no defense why Gilbert could not state its own position on how much it thought it was owed in quantum merit to its client. And this is a clear breach of a legal and ethical duty. Mr. Schor says that any mislabeling on the spreadsheet was just a scrivener's error. It was inadvertent and not intentional, and I take it you disagree. Well, Your Honor, I think that that issue, and it was one that the district court stated, is, you know, a separate and apart issue from whether or not that was adequate evidence. But I do think that what I would say is I don't know that there's evidence of intent, but what there is is it clearly was an incorrect submission by Gilbert. But I think in fairness the district court didn't put a lot of weight in it. It was at the end of the opinion the district court said they arguably misrepresented. So I don't think that's the primary basis for the district court's decision. I think it was much more that Gilbert withheld, you know, what the clients needed and wouldn't even tell them what they thought they were owed. And the Supreme Court of the United States, the Supreme Court of Mississippi, and Mississippi Rule of Professional Conduct 1.5 all required Gilbert to exercise billing judgment. The Supreme Court said it in Hensley v. Eckerhart, the Supreme Court of Mississippi in Malkvie Columbus Hotel Company. And it's undisputed that Gilbert refused to do that, refused to tell the Rigsby's what Gilbert believed it was owed. Gilbert, in effect, leveraged a conflict between the parties to place the Rigsby's in a bind. If the Rigsby's valued Gilbert's fees highly and the district court awarded less, Gilbert could argue that the Rigsby's made a judicial admission that it was entitled to more and should be stopped from denying that Gilbert was owed more money. In fact, Gilbert tells you on page 37 of its principle brief that it has the right to make that argument. Alternatively, if the Gilberts placed a lower value on Gilbert's fees, it could argue that it should have recovered more and it was the Rigsby's fault by not being aggressive enough. What Gilbert overlooks, that this was indeed their strategy, is that they had an independent ethical duty, when you're going to tell a client they owe millions of dollars, to exercise a good faith analysis and to look at the factors in quantum merit under Mississippi law and tell them how much. And it's a fundamental principle in equity that no person can take advantage of his own misconduct. So Gilbert wasn't entitled to force its former clients to make an admission it could use against them by not giving them information that it had, ethics obligations, by not turning over billing-related evidence that the Rigsby's needed to put in the fee request for Gilbert's fees and expenses. Mississippi rule of professional conduct 1.16d says that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest. The parties agree that rule requires a discharge attorney to maintain and turn over relevant evidence. The disagreement is that Gilbert argues that the duty expires once the files transition to successor counsel. But nothing in that rule supports that reading. The rule defines the bounds of the obligation in terms of burdensomeness, not time or project milestones. And if you want to look at what is the bound of that, what is the end, Mississippi Ethics Opinion 98 tells you that. They tell you that when you're a discharge attorney, you have a duty that persists for the duration of the client's litigation to maintain and turn over relevant evidence in your possession of the client's needs. And in this case, what the Rigsby's asked for and what Gilbert refused to provide falls squarely within that category. Receipts for Gilbert expenses clearly are documents that were relevant to the Rigsby's attempt to recover Gilbert's fees and expenses. And a declaration from Gilbert attorneys explaining what they did and why they think it's reasonable is relevant and necessary evidence solely within Gilbert's possession. Additionally, one of the big defenses that Gilbert tries to have to this is they try to blame Rigsby's successor counsel for not doing what they should have done. However, the Rigsby's current counsel couldn't provide the evidence, and certainly any evidence they would have provided would have been inferior to what Gilbert provided about what Gilbert's attorneys did. And one of the main reasons why is because all that Gilbert would give the Rigsby's was an unedited, unverified spreadsheet. But the Rigsby's, without Gilbert's help, couldn't even satisfy the most basic foundation and hearsay requirements for that document. The hearsay rule requires any testimony in court and any declaration to be based on first-hand knowledge. No one had first-hand knowledge of what the entries in that spreadsheet mean other than Gilbert. When Gilbert filed its motion in 2017, seeking the value of its lien, it attached a declaration saying, here's an Excel spreadsheet with all of our time entries. These are time entries that we have taken from our time entry system, and they accurately reflect time that our attorneys' contemplators reported. Nobody representing the Rigsby's now could do that because we weren't involved in creating the Excel spreadsheet. Yes, the same lawyer that was the lead trial lawyer at Gilbert was the lead trial lawyer now, but he couldn't testify as to how Gilbert made that spreadsheet. All he had was an assertion by Gilbert that, by the way, Gilbert refused to repeat in a declaration to the court. So there was no way he could even lay the foundation for that argument, for that document, much less opines the reasonableness of each of the entries on it. Additionally, you had the problem of the ethics conflict we talked about, how no matter what position he did, if he tried to opine on the reasonableness of those, it would create an omission that Gilbert could use against him. So he did what was appropriate, which is he said, Gilbert, you take a position, you tell us what you think you're owed, you tell us why, you tell us what your analysis is in a quantum merowit. We'll look at it, and if we don't have a big objection, we'll present it to the court. But Gilbert refused because he wanted to put the clients in a box that it wasn't entitled to put them in. Additionally, it would be impossible, when you think about it pragmatically, yes, the same lead attorney was at both firms, but we're talking about over 4,000 entries on a spreadsheet that were billed over a three-year period two to five years earlier by 38 different lawyers. I don't remember what I was doing on a given day four years ago, and I certainly don't know what 38 other attorneys who may have been working on similar matters were doing on that day. The only way you really could do and appropriately support those entries would be to go to the attorneys who billed those hours and have them look at their records, refresh the recollection, and say, yes, this is what I did on the case, and here's why I think this amount of time was reasonable. But Gilbert refused to do that. And the current attorneys don't have access to Gilbert's attorneys. They can't go interview the attorneys. They can't. They don't have access to the records. And as a result, Gilbert, the current attorneys could not put in this evidence. And even if they did, it would be vastly inferior from what Gilbert could put in for its own attorneys. So what specific requests were made of them in that regard to provide that sort of detail or explanation? If you look at, the best source of that would be the e-mail exchanges that we included in our appendix. And if you look at that e-mail exchanges, I believe that they focus on exactly what's requesting three things. We're repeatedly asking them, tell us what you think you're owed. And give us — Can you give us an example? I don't want to spend a lot of time reading from the record, but can you give us an example of specifically what was said or what was asked? Sure, Your Honor. For example, here's a part of that. This is the Rigsby's attorneys talking to Gilbert, saying, I think it would be a mistake not to put — Was this an e-mail? This is an e-mail. I'm actually looking at our appendix on page 6. What record site is it? Do you have that? It's 25178. Okay. And he says, I think it would be a mistake not to put this in front of the court at this time. The court may decide that you are entitled to reasonable fees, so it makes no sense to me why you would risk waiving whatever right you may have by rejecting our invitation to submit your bill. You had no ethical difficulty in making a filing without a client in respect to the lien, so I'm confused as to why you believe that filing a fee petition with the client authorization would be problematic. In any event, I have no interest in seeing you waive your opportunity to request fees in this matter. So if you send us an edited bill, there's where we're asking for the number for them to exercise billing judgment. That reflects your representation of your reasonable fees. We will submit the bill to the court. And again, so we're asking them to — for an explanation. What date was that? This — the date on this email is May 2nd, 2013. So this is May 2nd, 2013. There's an entire email exchange, and it's in our appendix going back and forth, that gets into us specifically asking them repeatedly. And their response — there's a couple emails back and forth, and they ultimately end up saying — and then in a follow-up email, we point out, wait a second, there's even entries for other matters in here. You haven't exercised billing judgment. They said, we are taking another look, and if there are any additional judgments, we will be sending you an updated spreadsheet. We will not be submitting an affidavit regarding our fees and expenses. Best, Barry. That was their answer. The concept of sleeping on their rights between 2013 and 2017, is this an illustration that you say goes to that equitable principle? It absolutely is, Your Honor. We repeatedly asked them to provide a statement, a declaration that we could use to support the fees and expenses, and they refused. And now, what — how did you lose the benefit by virtue of their sleeping on their rights? Yes, Your Honor. If you look at the district court's 2013 fee award against State Farm, what he did was he said, I know — because both — two attorneys left Gilbert to go to the successor firm, August Mateys and Derek Sugimura. And the court looks and says, I know who these two guys are. These guys have been in my courtroom a lot. I've seen the work they've done. I'm aware of what they personally have done. So I'm going to give Gilbert his — the fees and expenses for them. There are 36 other people on this timesheet that I have no idea who they are, and I have no idea what they did, and I have no idea what their years of experience are. Exactly the sort of stuff you would put in a declaration to justify reasonable fees and expenses, I can't award those. And so it was a direct relation to Gilbert refusing to provide those declarations from those folks that led to the district court not awarding those fees and expenses. Additionally, Your Honors, Gilbert also violated its engagement agreement, which required it to seek expenses from State Farm. And I won't spend a lot of time on it. I know Mr. Schor went over it. The one major disagreement is whether or not the termination provision requires them to — maintains the obligation for them to help the Rigsby's recover Gilbert's fees and expenses from State Farm. We believe, under a plain language reading of that, it specifically says that the recovery of expenses after termination will be governed by the terms of the — by the terms in the cost, expenses, and attorney's fees section of that engagement agreement. And we don't believe it makes any distinction between parts of that that will apply to recovery of costs and parts of it that don't. Finally, Your Honor, I'd just like to end by pointing out that Gilbert tries to argue policy implications of this. But the only policy implications for this that would be negative would be if the court would reverse the district court. The district court was obviously right. The entire framework that the Supreme Court set out in Hensley v. Eckerhart for how attorney's fees disputes are supposed to be handled breaks down if discharge former counsel can simply refuse to help their clients recover their fees and expenses in a fee-shifting context. The Supreme Court says that fee-shifting disputes should not lead to a second major litigation. Yet, allowing discharged firms to refuse to help clients under fee-shifting statutes can only encourage more and more contentious litigation. I mean, what were we supposed to do in this case? File 38 deposition subpoenas and take 38 depositions of each of the people because Gilbert didn't want to give us a few affidavits? It's also irreconcilable with what the court said were the expectations of parties and courts in fee-shifting. Hensley requires parties to provide evidence to support fee requests. Well, in the mine run of cases, how possibly can a party support its fee requests to a court if its own attorneys won't provide them with the evidence they need to present this to the court? It also requires district courts to provide a concise but clear explanation of the basis of the fee award so that appellate courts like this one can review it. Well, a party can't give a district court a concise but clear explanation if their own attorneys won't even say what they think they were owed and explain why they think it was reasonable. In short, Your Honors, the district court's decision is well-founded in the law, supported by ample evidence, reaches the fairest possible result in equity, and is the only result that fulfills the Supreme Court's admonishment about how fee disputes should be and fee shifting should be handled. Accordingly, we ask this Court to affirm. Thank you, Your Honors. Mr. Copley, Mr. Schor, you're safe some time for rebuttal. Mr. Schor, I'm just puzzled. Why did Gilbert choose not to submit a careful, edited, detailed, reasonable fee submission from the get-go? Your Honor, I guess two points in response to that. Why did we not submit what Vice-Provost Bentez and Copley was asking for? What relators needed to submit was a It's not some kind of generalized notion of what's reasonable or what was incurred. It's a strategic judgment. It's a legal judgment of what are you entitled to and what do you want to seek. And we were not in a position to make those judgments. Those are legal judgments on behalf of State Farm. Vice-Provost Bentez and Copley had made clear that they were going to submit whatever we gave them. In other words, they were shifting to us the responsibility to be relators' lawyers on the Gilbert portion of the fee claim. And we couldn't do that. We couldn't consult with relators because they were not our client. We couldn't make legal judgments on their behalf. So that's part A. And part B is we could not file something directly on our own behalf because we don't have any standing and we don't have any claim under the statute. The claim was relators. And if we had tried to intervene, we think we would have been kicked out. We think that, I guess, makes clear that the claim is the relators, the successful plaintiffs, and not the law firms. Another way of responding to your question, though, is to go back to the e-mail exchange. And Mr. Copley read an e-mail from Augie Mattez Thursday, May 2nd, asking for our bill, which, by the way, the spreadsheet that we provided was the equivalent of our bill. This is what we were saying. We were owed. But here is the response. We accept your offer to submit our fees and expenses to the court, understanding that you will do so subject to the qualifications noted in your e-mail below. This is an e-mail of May 2nd, 2013, responding to Mr. Mattez's e-mail that Mr. Copley quoted. He says, understanding that you will do so subject to the qualifications noted in your e-mail below, I have attached a spreadsheet reflecting our reasonable fees and expenses. As I noted in my prior e-mail, this spreadsheet reflects adjustments based on a normal billing process review. We understand that your firm will be performing a substantive review to ensure that none of the entries reveal anything privileged, confidential, or otherwise prejudicial to the client. Then Mr. Copley noted that they identified an error, one or more errors on the bill, and Mr. Mattez wrote to Mr. Buckman about that, Mr. Buckman, a partner at Gilbert, on Friday, May 3rd at 9.39 a.m. Mr. Buckman's response was, thanks, Augie. We are taking another look, and if there are any additional adjustments, we will send you an updated spreadsheet. So we gave them a spreadsheet with all of our time entries for which we were, we believed we were entitled to payment. We said that it was reasonable. We said that it reflected editing, and we corrected, made a new review and corrected errors when they were pointed out to us. I want to also address the question of, that Judge Smith, Your Honor, asked, which is what did they ask for that we didn't give them? And the answer is nothing, except for an affidavit that would say these are the fees and expenses out of the totality that were incurred by Gilbert that we relators want to seek from State Farm, making the strategic judgment about what to seek, and then opining on reasonableness. We didn't do that because we believed that that would have been representing relators as their counsel in making those determinations, and we could not do that. But everything else they asked for, we gave them. We gave them all of our time entries, all of our fees, all of our expenses. Mr. Copley complains that we didn't give them documentation of the expenses. They didn't ask for documentation of the expenses. They did not ask for receipts. It's nowhere in the record. And the proof that they didn't ask for it and didn't want it and didn't need it is that for Weisbrod, Bates, and Copley's and Heidelberg's expense submission in 2013, they did not attach copies of receipts, copies of invoices, or anything else that they're now falsely claiming to this court, we didn't give them. The bottom line is Weisbrod, Bates, and Copley and the relators were essentially trying to shift to Gilbert the totality of the responsibility for pursuing this claim, for figuring out how to pursue it, and for effectuating the pursuit of the claim. Even to the point of— Your time has expired now, Mr. Schor. Thank you. Thank you, Your Honor. The case is under submission. Case number three, Firefighter's Retirement System v. Grant Wanton, LLP.